## Munn *against* M'Donald.

If the payee of a promissory note endorsed by himself and subsequent endorsers, delivers it to his creditor as collateral security for a debt then created on the faith of such endorsements, without notice of any equity between the maker and payee, such maker cannot defend himself by showing failure of consideration as between him and the payee.

THIS was a writ of error to the district court of *Allegheny* county, to remove the record of an action of assumpsit, brought by Alexander M'Donald, to the use of Allen Kramer, against David Munn.

The plaintiff declared as endorsee of a promissory note made by the defendant, dated the 2d day of May, 1836, at eleven months, for 300 dollars, without defalcation for value received, payable to the order of Thomas J. Gass, and by him endorsed to the plaintiff. The defendant pleaded payment, with leave, &c.

It appeared by the evidence of M'Donald, that the above note with the further endorsements of Samuel C. Gass and James H. Neel, was given to M'Donald on the 1st of September 1836, as collateral security for the payment of a note made by Thomas J. Gass, dated the 1st of September 1836, at seven months, for 300 dollars, without defalcation for value received, payable to Alexander M'Donald or order:—the following receipt was taken at the time:—

"1st September 1836. Received of Thomas J. Gass a note drawn by David Munn, and endorsed by Thomas J. Gass, Samuel C. Gass, and James H. Neel, for 300 dollars, dated the 2d of May 1836, as collateral security for the payment of a note which he has this day given me for the same amount.

"ALEXANDER M'DONALD."

The defendant alleged, that Munn's note, on which the suit was brought, was given to Thomas J. Gass, in part payment for certain land which Gass had, by certain articles of agreement which were produced on trial, agreed to sell to Munn, and for which he was to make him a good and sufficient title, as soon as the purchase-money was paid; that Gass had forfeited his title to the lands before the date of the agreement. The defendant set up as an equitable de-

[Munn v. M'Donald.]

fence to the plaintiff's recovery on the note, this failure of consideration in the transaction between Munn and Gass.

On the part of the plaintiff, the testimony of Alexander M'Donald went to show, that he had received the note in question from Gass, in exchange for goods and money—that the goods and money were advanced by him on the sole security of the note, and that at the time he took the note, he knew of no set-off or objections of any kind.

Another witness stated a conversation between the plaintiff and defendant, in which the plaintiff in answer to a question by the defendant, how he came to purchase the note, not knowing whether defendant was good for it or not, replied, that he had bought it on the strength of James H. Neel the endorser.

The court below charged as follows:—

*Dallas,* president.—" This suit is instituted upon a note. The defendant seeks to avail himself of an equity, which he alleges existed between himself and T. J. Gass, the person to whom the note was given. It is contended, that the consideration between Gass and the defendant, totally failed, inasmuch as the note was given in part payment of a tract of land sold by Gass to the defendant, the title to which proved wholly defective, and some testimony has been produced for the purpose of showing the failure of consideration between Gass and Munn. It is very true, that if Alexander M'Donald took the note from Gass, knowing that the consideration between Gass and Munn had failed, owing to this defect in title to the land, for the payment of which the note was given, he (M'Donald) would be bound by such knowledge, and would not then be protected as a *bona fide* holder of negotiable paper, without notice. How stands the testimony upon this point? It may well be that M'Donald knew of the consideration passing between Gass and Munn, and may yet have been wholly ignorant of any impurity, or defect attending it. He swears positively, that at the time he took the note, he knew of no objection of any kind to its payment by the maker. This fact, however, is for the jury, and it is left with them. It is contended, that the receipt of M'Donald for the note in question, dated the 1st of September 1836, shows that the note was taken as collateral security merely, and that under such circumstances, the note could not be regarded as a commercial instrument, and the defendant would not, therefore, be precluded from his equitable defence. If the testimony is believed by the jury, it is impossible to regard the note in question, in any other light, than as having been given and received as a collateral security for the payment of a note given on the same day by T. J. Gass to Alexander M'Donald. That is, as I understand it, concurrent security, consisting of a promissory note, by which the promissor engaged to pay without any condition or contingency at the time mentioned, the amount of the note to the holder. There is nothing so magical in the terms, " collateral security," employed

[Munn v. M'Donald.]

by the holder in his receipt for the note, as wholly to throw his case out of the pale of protection extended to negotiable paper. These very words were used by the holders in Liskey *v.* O'Brien, 4 *Watts* 141, but the transaction received its true character from the proof in the case. M'Donald has testified, that this note was given to him for money and for goods; that the advance of money and delivery of goods, were made on the strength of this note; that he would not have given the goods nor the money, but for the note now in suit, which furnished to him his sole security, as he thought at the time. Under such circumstances, I cannot charge the jury, as requested by the defendant's counsel, but am of opinion, that the terms of the receipt thus explained, impart to the transaction, an ordinary business character, which would bring the note within the general protection afforded to negotiable paper, and render it an instrument upon which money and goods have been paid at the time of the transfer. It is not necessary to look at, much less to revise, the New York cases upon this subject, because they do not I think, apply to the present. Our own courts would not hesitate, under the testimony in this case, to regard it as one of a note taken in the usual course of business, for a fair and valuable considera- tion. 4 *Whart.* 258; 11 *Serg. & Rawle* 388; 3 *Kent's Com.* 51; 2 *Stark. Ev.* 252; 1 *Saund. Pl. & Ev.* 304–5; 8 *Conn. Rep.* 237; 11 *Conn Rep.* 388. The *bona fide* holder of such an instrument, having received it for a valuable consideration, in the usual course of business, must be protected. The liabilities of parties to a bill of exchange have been fixed, say the supreme court of the United States, 6 *Peters* 69, on certain principles which are essential to the credit and circulation of such paper. These principles originated in the convenience of commercial transactions, and cannot be de- parted from, merely because cases of hardship occasionally arise in their enforcement. It is not wise, nor does it comport with the policy of the law upon this subject, to introduce new exceptions to the general rule, and thus create additional embarrassments in the circulation of negotiable paper. If the testimony be believed in the case before the court, the restrictions now proposed to be adopted, would have a great and alarming effect upon the circulation of negotiable paper."

Assignment of errors.

1. In their charge to the jury, the court erred, in explaining and controlling the terms of the receipt from Alexander M'Donald to T. J. Gass, September 1, 1836, by the extraneous verbal testi- mony of the said M'Donald.

2. In stating that the transaction of the transfer of this note from T. J. Gass to Alexander M'Donald, was of an ordinary business character, and would bring the note within the general protection afforded to negotiable paper.

3. That though M'Donald knew that this note was given by Munn to Gass for land, yet he could not be affected by failure of

[Munn v. M'Donald.]

the consideration of said note for want of title to the land, without actual notice of such want of title.

4. In giving a binding direction to the jury on the facts testified to by witness, &c., in that part of their charge included in brackets.

*Williamson*, for plaintiff in error, contended, that the receipt was conclusive evidence that the note was taken as collateral security, and being so taken, it was but a pledge in the hands of the plaintiff, not a transfer in the ordinary course of business. He was in fact but a trustee for the payee from whom he received it. He stood, therefore, in the place of the trustee, to all intents and purposes, liable to every defalcation and set-off, to which the payee was liable. He cited 1 *Johns. Ch.* 429; 5 *Serg. & Rawle* 425; 4 *Rawle* 139; 12 *Johns.* 146; *Story's Bailm.* 197, 198; 11 *Serg. & Rawle* 381; 4 *Whart.* 258; 4 *Binn.* 366.

*Darragh, contra*, insisted, that the plaintiff stood in the situation of last endorsee, and held the note as such, discharged from all equities between the maker and payee. It was not taken for an antecedent debt, but for money and goods advanced at the time. He referred to 3 *Kent's Com.* 78; 1 *Saund. Pl. and Ev.* 354; 11 *Conn. Rep.* 388; 6 *Peters* 59; 4 *Whart.* 258; 4 *Watts* 141.

The opinion of the court was delivered by

SERGEANT, J.—The use of the term collateral security, when a debtor transfers to his creditor an article of value, or an evidence of debt, is intended to express, that it is not received in payment of the principal debt, and that it is not an additional right, to which the creditor is absolutely entitled. It is merely a concurrent security for another debt, whether antecedent or newly created, and is designed to increase the means of the creditor to realize the principal debt which it is given to secure. It is subsidiary to the principal debt—running parallel with it—collateral to it—and when collected, is to go to the credit of the principal debt; or if the principal debt be paid off, the debtor is entitled to a restoration of the collateral security. But though a thing be given as collateral security, the rights of the creditor in it, as against third persons, must depend on other considerations; and may vary with the circumstances of each particular case. If one delivers to his creditor, as collateral security, a negotiable note, already endorsed by several endorsers, there can be no other meaning in such a transaction, than that the creditor shall enjoy all the remedies on the note, which the law gives him as holder, and the state of the parties to that note, is in nowise changed by its being taken as collateral security. Such holder may recover from the last endorser, as well as the others, and such last endorser, in that case, may recover against a prior endorser, or the maker, free in either case from any defence on the

X.—Y

ground of want or failure of consideration between the maker and the payee. Now that was the case before us. The plaintiff received the note as collateral security for Gass's note, *bona fide* and for a valuable consideration, paid or advanced at the time. He received it as endorsee, with two endorsements upon it, besides that of the payee; and it is even proved, that he looked mainly to the security of one of these endorsers, and that it was at his instance the suit was instituted against the maker. The jury would be warranted in inferring from the evidence, that Gass procured the endorsements for the purpose of delivering them to the plaintiffs, for the receipt of the plaintiff specially mentions the endorsements, as upon the note at the time he received it. The plaintiff must be considered as receiving the note, not as the immediate endorsee of Gass, but of the last endorser, and Gass as the agent to hand it over to the plaintiff. To allow the defendant to interpose the defence he sets up, would deprive the plaintiff of the security contemplated by him when he agreed to accept the note, with the endorsements then existing upon it. Although, therefore, the note was given and received expressly as collateral security, yet the plaintiff stands in the position of a holder for value, and without notice of an instrument of such a nature, that we are of opinion, he is entitled to recover against the maker, free from any equity between the original parties.

The parol evidence does not go to contradict the terms of the receipt, but to show the circumstances under which it was given, and that the defendant was liable, notwithstanding the note was transferred as collateral security.

Judgment affirmed.