## Miller *versus* Pollock et al.

1. Where negotiable notes are indorsed over as collateral security for other notes then and there discounted by the indorsee for the indorser on the faith and credit of the notes indorsed as collateral, the indorsee of said notes is to be regarded as a purchaser for value. Hence no prior indorser can set up as against such indorsee the fact that he is an accommodation indorser only.

2. In a suit by such indorsee, against such prior indorser, no evidence is admissible on behalf of the defendant which does not prove or go to prove actual payment of the notes to the indorsee.

3. Where a suit is instituted by one person to the use of another, and subsequently on the trial it appears that the use plaintiff is both the legal and equitable owner of the security sued upon, it is competent for the court to allow the record to be amended so as to correspond to the facts of the case.

November 17th, 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Butler county:* Of October and November Term, 1881, No. 304.

Assumpsit, by the Kittanning Insurance Company, for use of William Pollock and James Musgrave, administrators of James E. Brown, deceased, against Adam Miller, upon two promissory notes, drawn by Frederic Miller to the order of defendant, and by him indorsed. Subsequently, on the trial of

[Miller *v.* Pollock.]

the cause, it appearing that Pollock and Musgrave, administrators, were both the legal and equitable owners of the notes, the record was, by leave of court, and under objection of defendant, so amended as to insert their names as sole plaintiffs. (First and second assignments of error.)

On the trial the following facts appeared : On March 7th 1877, Frederic Miller, having purchased of Samuel W. G. Brown the interest of said Brown in the firm of Brown & Ivory, gave him, in payment therefor, the notes in suit, indorsed by defendant. On March 19th 1877, before said notes had reached maturity, they were indorsed over by Samuel G. W. Brown to James E. Brown, as collateral security for certain other notes that day given by said Samuel G. W. Brown to said James E. Brown. These last-mentioned notes were, on maturity, taken up by and merged in notes for larger amounts, with which new collateral was given. These renewal notes were never paid. James E. Brown having afterwards died, the plaintiffs, his administrators, presented the notes in suit at maturity to the maker. Payment thereof being refused, the present suit was then instituted.

Defendant offered to prove that he was a mere accommodation indorser; that Frederic Miller, the maker of the notes in suit, had, after the date thereof, sold out all his interest in the firm of Brown & Ivory to Ivory, the said Ivory agreeing to assume all debts of the said firm ; that said Ivory afterwards sold all the property of said firm, and purchased with the proceeds thereof a certain leasehold estate in an oil well, and had given a mortgage on said leasehold to Samuel W. G. Brown in full payment and satisfaction of the notes in suit, which mortgage said Samuel W. G. Brown afterwards assigned to James E. Brown, plaintiff's decedent, said James E. Brown being notified that the mortgage was given in payment of the notes. Offer objected to by plaintiffs as irrelevant. Objection sustained ; evidence excluded. (Fifth assignment of error.)

Defendant requested the court to charge as follows :

" 1. The plaintiffs having shown and admitted that the notes in suit were held as collateral security merely, and were not transferred as payment, the plaintiff is not a bona fide holder, and the notes are subject to the equities existing between the original parties. *Answer.* We refuse this, there being no evidence that the notes taken were held as collateral security for an antecedent debt, but for money advanced on the day that the collateral security was taken on another note. (Third assignment of error.)

" 2. It having been shown by the plaintiffs that the notes of Samuel G. W. Brown, for which the notes in suit were transferred as collateral security, were paid by the substitution of

new notes, with other collaterals; that it relieved Adam Miller, who was but an accommodation indorser or surety, and that the plaintiffs cannot recover without showing what has been done with the collaterals, and the burden of proof is on them to show what has been done with them." *Answer.* We refuse this also. We have not seen any evidence in the case that would go to show that these notes in suit were paid by the substitution of new notes or other collaterals. The evidence, as we understand it, is, that when these notes matured they were merged or included in other and larger notes, and additional collateral security taken; that when the additional collateral was taken the notes had grown larger, and then the collateral grew larger. Now, if at any time it was shown that these notes were reduced below the original amount of $2,000, it was a payment by collaterals, and the defendant would be entitled to credit for whatever amount it is shown they were reduced below $2,000. But, if we understand the proof, the indebtedness never was reduced, but it kept increasing all the time, and new collaterals were taken when the notes were increased. The notes were given for $2,000 originally. As they were not paid, the debt due James E. Brown never was reduced below $2,000, and there is no foundation for saying that the proof shows that he should have given credit on these particular notes for the amount that he received on other collateral securities. We understand Mr. Pollock to say that neither of these notes of Frederic Miller, indorsed by Adam Miller, nor the notes of Samuel G. W. Brown, have been paid by the payment of this collateral or otherwise. That is what, we understand, he swore to on the witness stand; that the note of S. G. W. Brown remains unpaid, and the collaterals taken, as appear by the list, remain unpaid. According to that, then, S. G. W. Brown owed the estate of James E. Brown largely in excess of the $2,000 taken as collateral or part collateral. We believe that is all that is necessary to say to the jury. If the testimony of Mr. Pollock is relied on we do not see how there can be anything in this case but a verdict for the plaintiffs for the amount of the notes and interest. (Fourth assignment of error.)

The court instructed the jury to render a verdict for the plaintiffs. (Sixth assignment of error.)

Verdict and judgment accordingly.

Defendant thereupon took this writ, assigning for error the action of the court, in permitting the amendment in the names of the plaintiffs, the rejection of defendant's offers of testimony, the answers to defendant's points, and the instruction to find for plaintiffs. The assignments of error with regard to the answers to defendant's points were not sec. reg. in that they did not set out at length the points and answers.

[Miller *v*. Pollock.]

*H. H. Goucher* and *L. McQuistion*, for the plaintiff in error.—The amendment should not have been permitted. The Act of Assembly contemplates the correction only of a mistake in the name and not in the title of a party: Freeland *v*. Penn. Railroad, 2 Pearson 73 ; Ward *v*. Stevenson, et al., 3 Harris 21 ; Commonwealth ex rel. *v*. Dillon, et al., 32 P. F. Smith 45 ; Young *v*. Young, 7 Norris 422.

The transfer of mercantile paper as collateral security does not constitute the transferee a holder for a valuable consideration: Petrie *v*. Clark, 11 S. & R. 377 ; Walker *v*. Geisse, 4 Wharton 258 ; Depeau *v*. Waddington, 6 Wharton 220 ; Hartman *v*. Dowdel, 1 Rawle 279 ; Trotter *v*. Shippen, 2 Barr 358 ; Oakford *v*. Johnson, 2 Miles 203 ; Jackson *v*. Polack, 2 Miles 362 ; Lord *v*. Ocean Bank, 8 Harris 384 ; Sitgreaves *v*. Bank, 13 Wright 359 ; Lenheim *v*. Wilmarding, 5 P. F. Smith 73 ; Ashton's Appeal, 23 P. F. Smith 153 ; Royer *v*. The Keystone National Bank, 4 W. N. C. 86 ; Muirhead *v*. Kirkpatrick, 9 Harris 240.

Defendant could therefore set up the fact that he was a mere accommodation indorser as against plaintiffs.

*S. F. Bowser* and *L. Z. Mitchell*, for defendant in error.— The amendment was clearly proper : Rangler *v*. Hummell, 1 Wright 132 ; Commonwealth ex rel. *v*. Dillon, et al., 32 P. F. Smith 44.

The notes were indorsed to plaintiff's decedent as collateral, not for an antecedent debt but for a new and distinct consideration. Plaintiffs were therefore in the position of purchasers for value : Kirkpatrick *v*. Muirhead, 4 Harris 123.

Mr. Justice Sterrett delivered the opinion of the court, January 2d 1882.

The real difficulty in the way of a successful defence in the court below was the fact, established by uncontradicted evidence, that the negotiable notes in suit had passed before maturity for a valuable consideration into the hands of a bona fide holder, since deceased, whose personal representatives were the plaintiffs of record. This presented an obstacle that the defendant below could not overcome by the aid of any evidence in the cause, or any testimony, which he proposed to introduce. The notes, made by Frederic Miller to the order of and indorsed by defendant below, were delivered to Samuel G. W. Brown in consideration of the sale and transfer of his interest in the firm of Brown & Ivory, to Frederic Miller, the maker. Having thus originated in a regular business transaction, the notes were undoubtedly valid in the hands of the first indorsee, who before maturity and for a valuable consideration, passing to him at the

[Miller *v.* Pollock.]

time, indorsed and delivered them to James E. Brown, whose personal representatives are the plaintiffs below. Each of the notes was separately taken by James E. Brown, as collateral to a larger note made by Samuel G. W. Brown and simultaneously discounted for him on the faith of the collateral, and the proceeds drawn by him. The larger notes were renewed, but neither of them was ever paid or reduced. It is, therefore, a mistake to suppose that James E. Brown did not thus become a bona fide holder of the notes in suit for value. It is true, they were indorsed and delivered to him as collateral security, but not as collateral for a pre-existing indebtedness. The discounting of the larger notes, on the faith and credit of the note that accompanied each respectively, was a new and valuable consideration passing between the parties at the time; and the principal notes not having been paid, either in whole or in part, the collaterals were outstanding and valid in the hands of James E. Brown for their full face, and according to well settled principles the plaintiffs were entitled to recover: Munn *v.* McDonald, 10 Watts 270; Spering's Appeal, 10 Barr 235; 2 American Leading Cases 234, and numerous authorities there cited. In several of these cases the distinction between a merely collateral security and a security given as an inducement to an act, which is performed, is clearly recognized.

Such of the facts above stated as were not admitted by the defendant in the court below were clearly proved by competent and uncontradicted evidence, and there was, therefore, no error in giving the jury binding instructions as to its legal effect. There was not a particle of evidence in the case, on which they could have based any other conclusion.

While the third and fourth assignments are not according to rule, and, therefore, not entitled to notice, it is very evident, from what has been said, that the points therein referred to were rightly refused, for the reasons given at length by the learned judge in his answers thereto.

The fifth and sixth assignments of error are not sustained. The offers of evidence embraced in the former were rightly refused, for the reasons given by the court below. There was no offer to show payment, either legal or equitable, to the holder of the notes.

As to the amendment complained of in the first and second assignments, we are of opinion that it was fully authorized by the letter, as well as the spirit, of our statutes on that subject. The cause of action was unchanged. In its inception the suit was against the payee and first indorser of the notes by a party supposed to be the legal holder thereof. But it clearly appeared, during the progress of the trial, that this was a mistake; that, instead of the Kittanning Insurance Company being the legal,

[Lacock *v.* Commonwealth, to use.]

and James E. Brown the equitable, owner, at the time suit was brought, the latter was both legal and beneficial owner of the notes; and hence the amendment was properly allowed, in order that the case might be tried on its merits. The act of May 4th 1852, expressly authorizes the court, at "any stage of the proceedings, to permit amendments, by changing or adding the name or names of any party, plaintiff or defendant, whenever it shall appear that a mistake or omission has been made in the name or names of any such party." Our statutes of amendments have been liberally construed, and it has been repeatedly held that parties might be stricken out or added whenever, by so doing, the cause can be tried on its merits; and the right to so amend is not confined to a mere mistake of fact in the name of the party. As is said in Commonwealth ex rel. *v.* Dillon, 32 P. F. Smith, 44: "An action may be commenced in the name of a wrong party by mistake of law, and the legislature meant the power of amendment to extend to that case." If the defendant below was surprised by the amendment he had a right to ask a continuance, but instead of doing so his counsel informed the court that he did not claim surprise nor ask a continuance.

We discover nothing in the record of which the plaintiff in error has just reason to complain. The insuperable difficulty was, as stated in the outset, that he had no available defence to the payment of the notes in the hands of a bona fide holder for value.

Judgment affirmed.