Charlotte M. Parker and Robert W. Wallace, Copartners, trading as Parker & Wallace, *v.* The Oil Well Supply Company, Appellant.

*Contract—Agreement to go security to release attachment—Damages.*

An action may be maintained for the breach of an agreement to enter security to release an attachment; and if there has been an unreasonable delay in entering the security, and the defendant in the attachment has been injured thereby, the latter is not entitled to punitive, remote or speculative damage, but only such damages as are fairly or reasonably to be considered as arising from the natural and proximate consequences of the facts made known at the time of the making of the contract.

Argued Oct. 29, 1897. Appeal, No. 69, Oct. T., 1897, by defendant, from judgment of C. P. No. 2, Allegheny County, Oct. T., 1895, No. 501, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit for breach of contract.

The facts appear by the opinion of the Supreme Court.

Defendant's points and the answers thereto among others were as follows :

1. Under the evidence in this case, the jury should not find that the defendant is guilty of any breach of its undertaking to become or furnish bondsmen, or become guarantor for bondsmen in the attachment cases against the plaintiffs, and they should exclude from their verdict all damages testified to, as arising from said alleged breach. *Answer :* Refused. It will be further answered in the general charge. [1]

2. The jury should not in their verdict, allow the plaintiffs anything for the time and expenses of T. U. Parker in procuring the release of the attachments. *Answer :* Refused. Any such allowance should, however be limited to the time and expense caused by the defendant's neglect to perform its part of the agreement, if the jury find there was any such negligence. It will be further answered in the general charge. [2]

3. The defendant is not, under the evidence, liable to the plaintiffs for any alleged default under its agreement to furnish

the money and materials for sinking a second well on the Tuell farm. *Answer:* Refused. [3]

6. The evidence does not sustain the plaintiffs' allegation that the defendant took away from them in the latter part of November, 1892 (or at any time), the possession of any of their properties described in the deed of trust and mortgage, or that the plaintiffs suffered any specific deprivation or loss, upon any exercise of authority or possession by any of defendant's servants upon which the jury should find against defendant in this case. *Answer:* Refused. The point will be further answered in the general charge. [4]

10. If the jury find damages, they should only find such as were within the reasonable contemplation of the parties, when the contracts were made, and that would exclude from the consideration of the jury, all matters of which the defendant is not shown to have had knowledge, or a duty owing the plaintiffs to make inquiry, and included in this are : the values of the properties (beyond the fact that it was adequate security), the ideal values founded upon the expectations, future intentions, resources and plans of plaintiffs ; the means, debts and ability and limitations of plaintiffs, and the cost and conditions of the properties, wells and equipments, and that a breach of the promise would reasonably be supposed to force a great sacrifice of it, as is alleged by the plaintiffs. *Answer:* Refused as put. The general proposition of law stated in the point is correct, but the point asks the court to exclude from the jury a consideration of some matters, which from the papers and testimony the jury may fairly find were within the reasonable contemplation of the parties when the contracts were made. [5]

12. Under the evidence in this case, the jury should not find any damages for loss of credit by the plaintiffs. *Answer:* Refused. [7]

15. The evidence does not show any damages as the result of any breach of contract by defendant. *Answer:* Refused. [9]

16. There is no evidence to sustain any finding by the jury of exemplary damages. *Answer:* Affirmed.

19. The jury should not find for the plaintiffs any damages excepting such as are proved to have been sustained by the partnership firm of Parker & Wallace. *Answer:* Affirmed.

26. Damages can only be recovered for the natural and proxi-

mate consequences of the facts made known at the time of the making of the contract, that is, they are entitled to recover only such as are fairly or reasonably to be considered, either arising naturally according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in contemplation by both parties at the time they made the contract, as the probable result of it.   *Answer:* Affirmed.

Verdict and judgment for plaintiffs for $14,586.76.   Defendant appealed.

*Errors assigned* among others were (1–5, 7, 9) above instructions, quoting them.

*Wm. B. Rodgers,* with him *J. H. Beal,* for appellant.

*D. F. Patterson,* with him *Charles L. Powers* and *J. R. Sterrett,* for appellees, cited Meigs v. Lewis, 164 Pa. 597 ; Black v. Baxendale, 1 Exch. 410 ; Sedgwick on Damages (8th ed.), sec. 127; Reiter v. Morton, 96 Pa. 229 ; Allison v. Chandler, 11 Mich. 542 ; Satchwell v. Williams, 40 Conn. 371.

OPINION BY MR. JUSTICE McCOLLUM, May 26, 1898 :

There are twenty-three assignments of error filed in this case. Fifteen of them are based on answers to the defendant's points, three on the admission of evidence objected to by the defendant, three on excerpts from the charge, and two on the alleged inadequacy, partiality and misleading tendencies of the charge as a whole.   The questions raised by them are not so numerous. As preliminary to the consideration of the questions to be determined it should be stated that previous to and at the time of the transaction which resulted in this litigation the plaintiffs were interested and engaged in the oil business in Tyler county, West Virginia, and Monroe county, Ohio, and that a few days before the transaction referred to certain parties claiming to be creditors of theirs attached all their property in Tyler county. The nature of their business and of the property attached called for a prompt dissolution of the attachments to protect them against the loss they would sustain by their continuance.   To obtain the dissolution of them it was necessary to provide bonds conditioned

for the payment of the amount, if any, which the attaching creditors should recover on their claims.   The plaintiffs on consultation with their attorney in West Virginia concluded to apply, for relief against the attachments, to the Oil Well Supply Company, a Pennsylvania corporation with which they had quite extensive dealings, and to which they were then indebted on five promissory notes in the sum of about $8,000.   It is now claimed by them that in accordance with this conclusion they requested said company to furnish the bonds required for the dissolution of the attachments, and that they received from it, through its president, a promise to furnish the bonds immediately, which promise was not complied with, although they adequately indemnified the company against all liabilities which it might incur by the fulfilment of it.   As the Oil Well Supply Company through its officers and agents now denies having made the promise above stated, a reference to the papers drawn by its counsel at or about the time the plaintiffs requested it to furnish the bonds may not be amiss.   These papers related to the procurement of bonds for the purpose already referred to, and to other matters which need not be specifically mentioned. Among them was a deed from the plaintiffs to L. P. Hill of all their oil wells, machinery, fixtures and appurtenances, and all the oil leases or interests in oil leases held or owned by them in Tyler county; in trust, however, to secure to the Oil Well Supply Company the payment in full of all indebtedness due or to become due from the plaintiffs to said company, and all liabilities incurred by said company or any of its officers or members, " either directly as bondsmen or guarantors of bondsmen " for said plaintiffs " in any actions of foreign attachment brought against them in the state of West Virginia or state of Ohio."   One of them is a bond from the plaintiffs to the Oil Well Supply Company in the sum of $10,000, to secure the latter against loss sustained or liabilities incurred as guarantor of bondsmen.   Another of them is a conveyance or mortgage from the Parkers to the Oil Well Supply Company of all their leases and oil wells on the Tuell farm, to further secure to the latter the indebtedness specified in the Hill deed, and the observance of " all the obligations contained in the bond" above mentioned.   The papers specifically referred to are designated as " exhibit A," " exhibit No. 1," and " exhibit No. 2," and they

appear to have been drawn, signed and acknowledged on October 8, 1892. The paper marked as "exhibit B," was also written and acknowledged on that day, and the paper marked "exhibit No. 3" was apparently written on the 15th and acknowledged on the 17th of the same month. It will thus be seen that the preparation of four of the five papers to which we have referred was contemporaneous with or closely followed the application of the plaintiffs to the Oil Well Supply Company to furnish bonds for the dissolution of the attachments. They were obviously the outcome of that application, and they must be construed with reference to it as well as to other matters to which they relate. In construing them the position of the parties, the objects they had in view, and the circumstances surrounding and connected with these transactions must be considered. The seizure, on the attachments, of the plaintiffs' property in West Virginia seriously obstructed their business operations there and materially impaired their credit. A prompt dissolution of the attachments was therefore of the first importance to them, and that it was so was well understood by the Oil Well Supply Company. What the plaintiffs needed most was a responsible party, ready and willing, on being adequately indemnified, to furnish the bonds at once, and they manifestly supposed that in the Oil Well Supply Company they had found and contracted with such a party. Having, in their deed to Hill and their bond to said company, fully indemnified the latter against all liabilities it might incur as their bondsman or guarantor of bondsmen, they were clearly entitled to the service they applied for, and without which a prompt dissolution of the attachments was not obtainable.

The papers under consideration fully warrant, we think, the construction put upon them by the learned court below. It is in accord with the oral testimony, showing the intention of the parties, and with the letter written and sent by the president of the company to Hill on the day the papers were prepared and executed. It was therefore the duty of the company to proceed without delay to effect a dissolution of the attachments.

In and by the paper marked "exhibit B" the Oil Well Supply Company agreed, among other things, to furnish all money and material necessary for sinking a second oil well on the Tuell farm in Monroe county, Ohio, and out of the proceeds of

the oil obtained from said property to pay all the running expenses for carrying on operations on the same ; to advance the money necessary to pay such bills against said property as Parker directed to be paid, not exceeding $1,000, and to advance and pay to him for services in the supervision and care of the property such sums as were reasonably required for personal and family expenses, not to exceed $150 per month.

It is claimed by the plaintiffs that when their property was finally released from the attachments the Oil Well Supply Company, in violation of its promises and representations, and in fraud of their rights, took possession of the same, and wholly excluded them and their superintendent or manager from the possession and control of it.

It was clearly for the jury to determine upon the evidence, and under instructions from the court, whether the Oil Well Supply Company failed or refused to perform or abide by its agreements with the plaintiffs, and, if it did so, to ascertain from the evidence whether the plaintiffs sustained loss or damage as the direct result of such failure or refusal. In the instructions under which these matters were submitted we are unable to discover inadequacy, partiality or misleading tendencies. They carefully and fairly presented to the jury every question of fact arising from the conflicting evidence on which it was their province and duty to pass, and neither party to the suit has reasonable cause to complain of them. The same may be said of the instructions respecting the measure of damage. The learned trial judge adopted without qualification the rules contained in the defendant's sixteenth, nineteenth and twenty-sixth points, and affirmed the general proposition of law contained in its tenth point, qualifying it only in so far as it contained matters proper for the consideration of the jury. If the defendant company desired further instructions as to the measure of damages it should have requested them. It seems to us, however, that the instructions on this point were unobjectionable and adequate. They carefully guarded against the allowance of punitive and remote, or speculative damages, and restricted the jury to the allowance of actual damages only.

In accordance with the foregoing views the specifications of error are overruled and the judgment is affirmed.