ROMAIN BLAKESLEE, Appellee, *vs.* LAURA E. BLAKESLEE,
Appellant.

*Opinion filed October 16, 1914.*

1. PLEADING—*when defendant is not relieved from admission in
answer withdrawn by leave of court.* The fact that the defend-
ant's original answer in a partition suit is withdrawn by leave of
court does not relieve the defendant from the effect of an admis-
sion therein that the complainant was entitled to partition, where
the record does not show that the order granting such leave was
based upon an affidavit that the admission was improvidently made.

2. PARTNERSHIP—*how question whether real estate is partner-
ship property is determined.* Whether real estate is partnership
property or not depends largely upon the intention of the partners,
which may be shown by their acts and conduct or by proving an
express agreement; and the mere fact of the use of the land by
the firm does not make it partnership property, nor is it necessarily
the individual property of the members of the firm because the
title is held by them as individuals.

3. PARTITION—*fact that real estate is leased does not prevent
partition.* The fact that the real estate sought to be partitioned is
leased to a tenant for a period of ten years, with an option to pur-
chase, does not deprive a co-tenant of his right to partition, in the
absence of any other circumstances tending to show an estoppel
upon his part to claim partition. (*Martin* v. *Martin,* 170 Ill. 639,
distinguished.)

APPEAL from the Circuit Court of Cook county; the
Hon. JESSE A. BALDWIN, Judge, presiding.

ERIC WINTERS, for appellant.

BRADY & RUTLEDGE, (JAMES A. BRADY, of counsel,)
for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellee, Romain Blakeslee, filed his bill in the circuit
court of Cook county for the partition of certain property
therein particularly described and known as Nos. 435 and
437 South Western avenue, in the city of Chicago. The

bill alleged appellee was the owner of the undivided one-half of said property and that Laura E. Blakeslee, appellant, was the owner of the other undivided one-half. In addition to asking for partition, the bill alleged appellee had, with the knowledge and consent of appellant, caused extensive improvements on the property to be made, which he paid for out of his own means; also that he had paid various sums for repairs, taxes and assessments, and he prayed an accounting therefor. Appellant answered the bill, admitting she and appellee were owners of the property as tenants in common and substantially admitting all the material allegations of the bill. The answer did not deny that appellee had made improvements upon the property but called for strict proof of the amount. The answer denies appellee had expended anything for taxes, repairs and assessments on the property, and admits that a division or partition of the premises so owned in common by the parties should be made. The cause was referred to a master to take the proof and report his conclusions of law and fact. While the cause was pending before the master, and after the taking of testimony had begun, appellant obtained leave of the court to withdraw her answer and file an amended answer. The amended answer denied the property was owned by appellant and appellee as tenants in common, and averred said parties were partners and that the property was a partnership asset, that the partnership still existed, and the property was not subject to partition. As a further reason why appellee was not entitled to partition, the answer alleged that appellant and appellee, as co-partners, on the first day of August, 1910, leased the property to one Robert Shine and also gave him an option to purchase said premises. For these reasons the answer averred the property could not be sold, under a decree, for its full value and that it would be inequitable and unjust to decree its sale. The master found and reported, from the testimony, that the property was owned by the parties as ten-

ants in common, stated the account between the parties and recommended a decree as prayed in the bill. The chancellor overruled exceptions to the report and entered a decree in conformity therewith, from which decree defendant, Laura E. Blakeslee, has prosecuted this appeal.

A brief statement of certain leading facts is as follows: On February 5, 1901, appellant owned in fee simple the property sought to be partitioned, subject to a mortgage which had been foreclosed or was in the process of foreclosure. There was a two-story brick building on part of the property and a barn in the rear. Appellant had for several years prior to February 5, 1901, with her brother, been conducting a storage and livery business on the premises. She was then Laura E. Dupee. Some time prior to February 5, 1901, negotiations began between appellant and appellee for the purchase by appellee of an undivided one-half interest in the property. Just how long these negotiations were going on before the date mentioned does not appear from the evidence, but it does appear that before or on that date they had reached an agreement by which appellee was to purchase an undivided one-half interest for the sum of $4000, and on said day appellant executed to appellee a warranty deed conveying him the undivided one-half of the property, subject to one-half of all taxes and assessments levied for the year 1900. The consideration expressed in the deed was $4000. Articles of co-partnership were entered into between the parties, bearing the same date as the deed, wherein it was agreed appellee was to purchase a one-half interest in the property and that said parties formed themselves into a partnership, to be known as Blakeslee & Dupee, for the purpose of conducting a general warehouse and storage business on said premises. The agreement recited they were to be equal partners and share equally in the profits and losses of the business. Appellant agreed to devote her time and services to the management of the office and keeping the books and accounts

of the business, and appellee was to do the soliciting and outside work and have the general management and oversight of the business. Neither party was to receive any salary. The partnership was to continue until dissolved by mutual agreement or by operation of law. On the 23d of February, 1910, appellant and appellee were married to each other. Discord and disagreements arose between them, and on the first day of August, 1910, they leased the property in controversy, together with other property belonging to appellee, to Robert Shine for ten years. The lessee was to pay as rent $35,000, in monthly installments of $291.66 each. It was agreed between appellant and appellee that $125 of this amount represented the monthly rental of the property in controversy. The lessee was given the privilege of a renewal of the lease at the end of the term for another ten years upon complying with certain conditions mentioned. He was also by the same instrument given the privilege of purchasing the property at any time within five years after the date of the lease, for $30,000. Also, on said August 1, 1910, an agreement was entered into between said lessee, Shine, and appellant and appellee, for the sale to Shine of the business, property and good will of the partnership. The agreement recited the terms upon which the partnership assets were sold to Shine, and he was given the right to use the partnership name of appellant and appellee in the conduct of the business during the term of the lease.

There never was any express agreement between the parties, verbal or written, that the real estate sought to be partitioned was to be an asset of the partnership, but appellant contends that it was shown by acts and conduct that it was intended by the parties to be, and was, a part of the assets of the partnership. To sustain this position reliance is placed upon some acts and statements of the parties, but particular reliance is placed upon the partnership books. For some time after the partnership was entered into ap-

pellant kept its books of account. The books kept consisted of cash books and memorandum books. In 1908 a competent book-keeper and accountant was employed, and from the books kept by appellant or information furnished by the parties, or one of them, or from both said books and information, the said book-keeper prepared a journal and ledger. The books of original entry were not offered in evidence before the master but the journal and ledger prepared by the accountant were offered but not admitted. It appears from pages offered in evidence and copied in the abstract, that in the books as prepared by the accountant the real estate was treated as a partnership asset. Appellee appears to have had very little knowledge of the books, and it is not shown that it was by his authority or direction that the accountant made up the books treating the real estate as firm assets, nor is it shown that he at any time objected to or raised any question about the property being so treated. Without further going into detail, appellant's proof tended to show that the real estate was treated as an asset of the firm. On the other hand, the proof of appellee tended to show that it was not so considered and treated.

In the original answer filed by appellant she admitted she and appellee were tenants in common and that he was entitled to partition. Appellant contends that this answer is not entitled to be considered and ought not to prejudice her, because it was withdrawn by leave of the court. Appellant's position, in effect, is, that the answer should be treated as one wherein an admission has been improvidently made and the party making it has been relieved of its effect by order of the court. This would be true if the order were based upon an affidavit that the admission was made under a misapprehension or by mistake. (*Maher* v. *Bull,* 39 Ill. 531.) Appellant calls attention to the fact that it does not appear from the record that no such affidavit was filed. The record shows that on motion of the solicitor for

appellant it was ordered she have leave to withdraw her original answer, file an amended answer instanter, and that the master hear the evidence and report his conclusions upon the issues made by the bill and amended answer. No order was made relieving the appellant from the admission made in her answer, and we would be unwarranted in assuming that the order made was based upon an affidavit that the admissions in the answer were improvidently made. If that were the fact it should be shown by the record.

As there was no express agreement that the real estate should be partnership property, whether or not it was must be determined from the acts and conduct of the parties themselves. In *Robinson Bank* v. *Miller,* 153 Ill. 244, it was said the mere fact of the use of land by a firm does not make it partnership property, nor is it necessarily the individual property of the members of the partnership because the title is held by the several members of the firm as individuals. Whether real estate is partnership property or not depends largely upon the intention of the partners, which may be shown by proving an express agreement or by the acts and conduct of the partners. In the above cited case the purchase of real estate by three parties for the purpose of building and operating a flour mill thereon, and its subsequent improvement out of partnership assets and its use by the firm, did not make it partnership property. In *Bopp* v. *Fox,* 63 Ill. 540, a purchase of land by four parties with their individual funds, the title being taken by them in their individual names, was held to be a purchase for partnership purposes and the land constituted a partnership asset. *Robinson Bank* v. *Miller, supra,* is reported in 27 L. R. A. 449, where an exhaustive note upon this subject will be found. The general doctrine of the cases seems to be that the purchase of lands with partnership funds is necessary to make it firm property, but this rule will give way, in equity, where it clearly appears the land was intended by the parties to be firm property and was so con-

sidered and treated by them. In order, however, to come within the exceptions to the general rule the intention of the parties must be clear and explicit.

It appears from the proof appellee agreed to purchase a one-half interest in the property some time prior to the forming of the partnership. As part payment of the $4000 consideration he was given credit for some $1500 he had previously advanced appellant. The balance of the consideration was paid by appellee paying $2500 on an existing encumbrance. Appellant's deed to appellee of a one-half interest recites it is subject to one-half the taxes and assessments levied for the year 1900. This would make appellee liable, individually, for the taxes and assessments. While the articles of partnership recite appellee is to purchase of appellant a one-half interest in the premises in question, it does not provide such premises shall constitute assets of the partnership or that appellant and appellee shall share in the rents and profits of such real estate, but provides that the net profits of the business conducted therein shall be divided equally. The encumbrances placed upon the property during the partnership were executed in the individual names of the partners and not in the partnership name, and in 1909, when appellee borrowed $5000 on the property for his individual use, before appellant would join in a trust deed on such property she required and obtained a bond indemnifying her from any loss, damage or expense which might be caused her in joining in the trust deed. This indemnifying bond recited it was secured by a mortgage from appellee on his undivided one-half of the premises in question. At the time they executed the lease of the premises to Robert Shine, August 1, 1910, they signed it as individuals and not as co-partners. On the same day the lease was made the parties executed to Shine, in their individual names, a bill of sale of the business conducted by them on the premises. After the lease to Shine the rent appears to have been equally divided between appellant and

appellee until February, 1912. From February to August, 1912, appellee collected the rents, until appellant by written notice dated August 27, 1912, notified Shine that the appellee was no longer her agent to collect the rents and demanded that he pay to her one-half the rent on the premises, or $62.50, monthly. After Shine was served with this notice it appears he paid the appellant her one-half of the monthly rental and received her individual receipts for the same. The last receipt given Shine by appellant was after the amended answer in this suit was filed. It appears the agreement to purchase preceded the forming of the partnership between appellant and appellee, though the deed and partnership articles were executed the same day. The property was bought with individual funds of appellee, and he paid a part of the purchase price by being credited with advances made a considerable length of time before the deed was executed.

The foregoing, together with other facts and circumstances not herein specifically referred to, tended to show the property was not treated and regarded by the parties as partnership property. Upon a consideration of all the evidence it cannot be said that the finding of the decree that the parties owned the property as tenants in common and not as partners was contrary to the evidence.

Appellant also contends that although the property be found to belong to appellant and appellee as tenants in common, appellee is estopped from having partition of the premises because of the lease to Shine and an alleged agreement between appellant and appellee that they would resume the partnership business at the expiration of the Shine lease, should he not elect to purchase the property. The fact, alone, that the premises are under lease to Shine is no reason why partition cannot be had. Any purchaser at the sale of the property would take the same subject to the rights of Shine under the lease, and the fact that the property might not bring as much as if it were not under lease

can have no bearing on the right to partition, in the absence of other circumstances. Partition by a co-tenant, when properly brought, is a matter of right, (*Hill* v. *Reno,* 112 Ill. 154; *Martin* v. *Martin,* 170 id. 639; *Hynes* v. *Jennings,* 262 id. 268;) and will be granted unless the party asking for partition is estopped by his own agreement or it would be in violation of a condition or restriction imposed upon the estate by one through whom he claims. *Dee* v. *Dee,* 212 Ill. 338; *Ingraham* v. *Mariner,* 194 id. 269.

*Martin* v. *Martin, supra,* is much relied upon by appellant. In that case, after stating the general rule that an adult tenant in common may demand partition as a matter of right, it is said the general and recognized exception to the rule is: "If several tenants in common or joint tenants should covenant between themselves that the estate should be held and enjoyed in common, only, equity would not, in the absence of special equities, award a partition at the suit of some of the parties against the objections of the others." In that case the property was so situated that it could not be partitioned, and as land at that time had greatly depreciated in value, the owners made a verbal agreement that they would not seek a partition but would lease it until a purchaser could be found who would pay a satisfactory price. It was held the land could not be partitioned during the existence of a lease executed in pursuance of the agreement. The court said the lease executed in carrying out this agreement evidenced that the intention of the agreement was that there should be no partition until the lease expired. The proof here does not bring the case within the rule of *Martin* v. *Martin, supra.*

We find no error in the record requiring a reversal of the decree, and it is affirmed.          *Decree affirmed.*