City National Bank and Trust Company of Chicago, Executor of Last Will and Testament of Dora Oberheide, Deceased, Appellee, v. Oberheide Coal Company et al., Appellants.

Gen. No. 41,271.

Opinion filed December 23, 1940.

LORD, BISSELL & KADYK and BARRY & CROWLEY, both of Chicago, for appellants; CUSHMAN B. BISSELL and JEROME J. CROWLEY, of counsel.

D'ANCONA, PFLAUM & KOHLSAAT, of Chicago, for appellee; D. H. MANN, of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Defendants appeal from a judgment for $11,660.34, entered on the finding of the court in an action on a promissory note for $5,910, dated November 14, 1923, payable to the order of the "Estate of C. Oberheide," five years after date, with interest at 6 per cent.

C. Oberheide died March 9, 1923. The defendant coal corporation owned and controlled by his widow, Dora, took over the business. His son, William, became the administrator of his estate. Three daughters, Sophia Knoeppel, Clara Blumenhagen and Dora Hohman, with two other sons, Christian H. and Fred, were his other heirs-at-law and next of kin. Dora Oberheide died testate January 5, 1937, at the age of 87

years. Plaintiff is her executor. This suit was begun May 19, 1938. The form of the execution of the note is "Oberheide Coal Co., C. H. Oberheide, V. Pres., William Oberheide, Treas., Fred Oberheide, Secy."

Two defenses are interposed (1) lack of title to the note in the executor (2) the payment in full of the note to Dora Oberheide in her lifetime.

Plaintiff has possession of the note and Dora Oberheide had possession of it. No indorsement appears on it. Section 8 (7) of the Negotiable Instruments Law (Ill. Rev. Stat. 1939, ch. 98, par. 28 (7) [Jones Ill. Stats. Ann. 89.028]) provides that an instrument payable to the estate of a deceased person shall be deemed payable to the order of the administrator or executor of his estate. William Oberheide was executor. Prima facie he is sued on an unindorsed note which is payable to his own order. Section 30 of the Negotiable Instruments Law provides that "if payable to order" an instrument "is negotiated by the endorsement of the holder completed by delivery." This note is not indorsed by the payee or any other person. Section 49 of the Negotiable Instruments Law in substance provides a holder may transfer an instrument payable to his order for value without indorsing it. The Illinois cases hold that in an action by one other than the payee the complaint must allege an assignment or indorsement of the note "or some other fact to show plaintiff's ownership." *Oulvey v. Converse*, 326 Ill. 226. The complaint here does not allege "assignment" or "indorsement" or other like fact. A note may be transferred as a gift without indorsement or written assignment by the payee "if delivered to the donee by the payee with intent to transfer the title." *Rothwell v. Taylor*, 303 Ill. 226. Brannan on Negotiable Instruments Law (6th ed.) p. 520, says a plaintiff in possession, but not payee, indorsee or bearer, to bring himself within the description of transferee under section 49 "must show that a holder transferred it to him

for value." The Supreme Court of Illinois holds that mere possession by such a holder "is not alone evidence of title, either legal or equitable, in the possessor" and "the burden of proof is on the possessor to prove his equitable title by showing the delivery to him with the intent to pass the title." *Collins v. Ogden,* 323 Ill. 594; *Elvin v. Wuchetich,* 326 Ill. 285; Brannan's Negotiable Instruments Law (6th ed.) p. 519.

These material facts plaintiff did not aver in its amended complaint nor upon the trial offer evidence tending to prove. Plaintiff relies on a statement made in the answer of defendants to the original complaint to the effect that the note and interest "were paid in full to Dora Oberheide, who was the legal owner and holder thereof." Plaintiff cites *Bartlow v. Chicago, B. & Q. R. Co.,* 243 Ill. 332, and *Blakeslee v. Blakeslee,* 265 Ill. 48. After this answer was filed plaintiff asked, obtained leave and filed an amended complaint to which defendants filed another answer. The cause went to trial on the issues as thus made up on the amended pleadings. Defendants say the original answer was by inadvertence; that by filing new pleadings the old pleadings were abandoned, and since the old answer was not put in evidence it is not now before the court. An improvident admission made in a pleading either at law or in chancery may be withdrawn. *Decatur Coal Co. v. Clokey,* 332 Ill. 253. The better rule would seem to be that an abandoned pleading should be offered in evidence by the party wishing to have it considered an admission. *Maher v. Bull,* 39 Ill. 531; *Savanna & York Drain Dist. Com'rs v. DeLa Vergne,* 298 Ill. 480; IV Wigmore on Evidence, § 1067, p. 61.

Plaintiff's original complaint as to the above point was inconsistent with the amended complaint. In the first it was alleged that Dora Oberheide obtained title to the note from the estate of C. Oberheide, while the amended complaint said she took title from the makers

of the note. Plaintiff says the defense of payment through an account stated and the defense of lack of title are mutually exclusive. Theoretically this is not true. As a matter of fact, as we see this record the defense of lack of title would prevail in the absence of the evidence introduced, which shows this note was included in an account stated by defendants and Dora Oberheide, and subsequently paid in full to her as agreed. In the absence of this testimony there is no credible evidence tending to show title in the executor.

The evidence shows without dispute that March 7, 1928, the makers of the note met with Mrs. Oberheide, her daughter Mrs. Knoeppel, her attorney, Mr. Mann, and another director, Mr. Mattingly, who was elected a director at the request of Mrs. Oberheide as was Mr. Mann, her attorney. It was at a meeting of the board of directors of the corporation held just after a stockholders' meeting. Mrs. Oberheide at that time ceased to be a director, officer or employee of the corporation, and did not so serve it thereafter during her lifetime. She owned all the stock of the corporation which she contracted to put in trust. Mr. Mann, who drew the trust agreement, and Mr. Mattingly became directors at her request and in order to carry out her plans. Mr. Mann says that he and Mattingly were "dummy" directors. Mr. Shanahan, the bookkeeper, was present at this meeting by request. William Oberheide was elected president of the corporation. Up to that time Mrs. Oberheide had served as president, at first on a salary of $50 per week and afterwards of $100 per week.

Mattingly testified minutes were made of this meeting and put on the books; that the indebtedness of the corporation to Dora Oberheide, as shown by the books, was agreed to be liquidated by payment of a certain amount per week. He was not able to recall the items but said he thought "it included whatever was owed her by the company." Shanahan testified that, as re-

quested about 10 days before, he made up a statement of the account of Dora Oberheide. He brought this statement made in longhand to the meeting and the general ledger of the defendant Company. The witness said something was said to him by everyone present at the meeting. The statement was passed around and after looking at it everyone said it appeared to be all right. The three Oberheide sons, Mrs. Knoeppel, Mr. Mann and Mr. Mattingly said something. Shanahan says, ''I told them it was taken from her account and how it was arrived at. I checked all the way back through the estate and through the notes payable and showed the amount that the books showed at that time. ... I think Mrs. Knoeppel asked me one or two questions about the salary. How we arrived at it. I told her I checked back the books and payments that had been made and by checks to her, and arrived at the adjustment from that.'' Shanahan also says that in making up the statement he had taken into account the three notes aggregating $15,910 appearing in the Notes Payable Account of the defendant corporation's ledger, less debits. The statement in longhand was given to C. H. Oberheide. He testified he laid it aside for future reference and after repeated search has been unable to find it. Shanahan further testified in detail as to the items included in this statement. The balance due to Dora Oberheide, he said, consisted of the three notes less payments and items charged to Dora Oberheide's account; payments she had made for some items, plus an adjustment for salary and an adjustment for an icebox. He says the statement showed the three notes aggregating $15,910, less credits. He pointed out the items on the ledger sheets which were produced at the meeting and which on the trial were introduced in evidence. The note sued on in this action was identified in the Notes Payable Account by an entry made November 17, 1923, in the account of estate of C. Oberheide, credit $5,910; also two other

notes for $5,000 each were credited. Debits against these included the sum of $6,278.27 as of December 31, 1924, a debit of $1,000 as of November 12, and another $1,000 debit as of November 21, in the journal, a debit of $2,631.73 as of April 15, 1925, making total debits against the notes of $10,910 and leaving a balance of $5,000, which was transferred from the Notes Payable Account in the ledger to the open account of Dora Oberheide on March 31, 1927.

The indebtedness represented by the three notes was thus wiped out. The balance found to be due to Dora Oberheide on open account was $6,629.54, to which was added $1,250 balance unpaid on her salary accruing to March 6, 1928, and an allowance of $312.45 on an adjustment for a refrigerator which Mrs. Oberheide had received from the company, making an entire sum due to her from the corporation of $8,191.99. Shanahan said all these items appeared on the statement.

Defendants were disqualified as witnesses generally under section 2 of the Evidence Act. Mr. Mann did not remember well. The testimony of Shanahan is corroborated by a resolution of the board of directors prepared by Mr. Mann. Mr. Mann says it is not exactly as he drew it. He, however, approved the resolution and admits he was not in the habit of doing so unless the resolution was correct. The resolution provided that this balance to Mrs. Oberheide should be paid at the rate of $100 per week. This was done. Checks for these payments were sent from March 7, 1928 to September 7, 1929. Sophia Knoeppel indorsed the checks as attorney in fact for Dora Oberheide. Up to 1935, the corporation often advanced moneys at the request of Mrs. Oberheide. Mrs. Knoeppel for Mrs. Oberheide repeatedly sent Mrs. Oberheide's check to reimburse the corporation for these payments. One of these checks was for the sum of $1,837.81. The mother died testate January 5, 1937.

The defendant corporation filed a claim against her estate for $206.78, which was allowed, apparently without objection. The claim recited that the amount was due, less credits and offsets.

The first suggestion that Mrs. Oberheide was still holding the note came from Mrs. Knoeppel to C. H. Oberheide in 1932. He demanded its return, which was refused.

From this recital of the evidence it appears that the note sued on was included in the settlement made between Dora Oberheide and the corporation on March 7, 1928. It is urged the pages of the ledger were not admissible since the entries from which he testified were not made by Mr. Shanahan and he could not say he knew them to be true and correct when made. We shall not review authorities in detail. It was certainly proper to use the ledger for the purpose of refreshing the memory of the bookkeeper as to the statement submitted. We think, too, the evidence as to the agreement of the parties to use the ledger and base the settlement thereon made these documents admissible.

It is said the note was not due at the time the settlement was made, and *Beebe v. Smith,* 194 Ill. 624, is cited to the point that there is no presumption the note was included in the settlement.

The testimony of Shanahan, Mann and Mattingly, the payments made to Dora Oberheide, the failure during her life to make any claim on this note, the failure to show any other basis for the sum found to be due to her at the meeting, compel the conclusion that this note was included in the settlement made and that the same has been paid in full.

The judgment will therefore be reversed with a finding of fact that plaintiff is the owner of the note but that it has been paid in full with interest, and judgment will be entered for defendants here.

*Reversed with finding of fact and judgment here.*

McSurely, J., concurs.

MR. PRESIDING JUSTICE O'CONNOR specially concurring: I agree with what is said in the foregoing opinion but the pleadings on the question whether the note in suit was owned by Dora Oberheide is of no importance because the evidence offered by defendants is that they paid Dora the note in full, in installments. Having paid the note to her, as their evidence shows, and as they contend in this court, they ought not now be permitted to stultify themselves and say the title to the note was not in Dora.

I go further than does the opinion of the court and say, although the point is not made, that there is no warrant for the judgment in the instant case against the three Oberheide sons. The note is not signed by them as individuals but as vice-president, treasurer and secretary, respectively, of the coal company. In these circumstances they are not individually liable. Section 20, ch. 98, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 89.040]. That section provides: "Sec. 20. Where the instrument contains, or a person adds to his signature, words indicating that he signs for or on behalf of the principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized." (See *Tampa Investment & Securities Co. v. Taylor,* 272 Ill. App. 541.) Professor Brannan (Brannan's Negotiable Instruments Law, 6th Ed., p. 298) in discussing § 20 above quoted says: "The plain language of this section, read with § 42, indicates that it was the intention of the draftsman and the commissioners to clear up the unnecessary and unpardonable confusion caused by the failure of some of the courts to exercise a little common sense and to recognize mercantile usage. Much of the difficulty found in this subject is purely manufactured and would not trouble a business man for a moment."