CHARLES C. COLOZZI, PLAINTIFF, v. BEVKO, INC., A
CORPORATION OF THE STATE OF NEW JERSEY,
CHARLES MAXWELL ALRICH, EDWARD O'HARA AND
CLIFFORD C. CORSON, DEFENDANTS.

Argued December 6, 1954—Decided January 10, 1955.

196

*Mr. Madison S. DuBois* argued the cause for the appellant James Hunter, III, receiver.

*Mr. Sidney P. McCord, Jr.,* argued the cause for the respondent Theodore Blumberg.

The opinion of the court was delivered by

BURLING, J. This appeal stems from proceedings in aid of execution on a judgment entered in a civil action in the Superior Court, Law Division. The appeal was taken from a final order entered by the Superior Court, Law Division, filed June 10, 1954, which vacated restraints upon the sale by the respondent, Theodore Blumberg, a resident of Pennsylvania who was not a party to the original action, of certain promissory notes made by Bevko, Inc., a New Jersey corporation, to, respectively, the defendants Charles Maxwell Alrich, Edward O'Hara and Clifford Corson. Blumberg's claim that he held the notes as collateral security for indebtedness of Alrich, O'Hara and Corson, was sustained by the order. James Hunter, III, a receiver appointed in aid of the execution in the principal action, appealed to the Superior Court, Appellate Division. Prior to hearing there the appeal was certified on our own motion.

Charles C. Colozzi, the plaintiff in the principal action, recovered a judgment for $30,000 against the defendants Alrich, O'Hara and Corson. Defendant Bevko, Inc. had secured a judgment of dismissal. The present appeal does not involve the validity of these judgments.

On March 18, 1954 the Sheriff of Camden County, pursuant to a writ of execution issued under Colozzi's judgment, levied upon the right, title and interest of Alrich, O'Hara and Corson in and to certain stock certificates and notes in the possession of Blumberg's attorneys, Starr, Summerill & Davis, in Camden, New Jersey. Blumberg, through his attorneys, on March 31, 1954 delivered a notice in writing to the Sheriff of Camden County, under the provisions of *N. J. S.* 2A:17–29, making claim to the stock certificates and notes. The property in question (*i. e.*, levied upon by the sheriff and subsequently claimed by Blumberg) was as follows: Certificate No. 1 issued by Bevko, Inc. to Alrich, representing 25 shares of capital stock of Bevko, Inc.; Certificate No. 2 issued by Bevko, Inc. to Corson, representing 25 shares of capital stock of Bevko, Inc.; Certificate No. 3 issued by Bevko, Inc. to O'Hara, representing 25 shares of

capital stock of Bevko, Inc.; note made by Bevko, Inc., payable to Alrich, in the amount of $20,000; note made by Bevko, Inc., payable to Corson, in the amount of $20,000; and note made by Bevko, Inc. to O'Hara, in amount of $20,000.

On April 28, 1954 the Superior Court, Law Division, pursuant to *N. J. S.* 2A:17–65 and 66, on motion of the plaintiff Colozzi, ordered Blumberg and the defendants Alrich, O'Hara and Corson, and each of them, restrained until further order of the court, from assigning, negotiating or otherwise transferring the above-mentioned stock certificates issued by Bevko, Inc. This order, which was filed April 29, 1954, appointed James Hunter, III (herein referred to as the receiver) as receiver of any right, title and interest of Alrich, O'Hara and Corson in the three promissory notes of Bevko, Inc., hereinbefore referred to, subject to any interest of Blumberg therein.

The receiver, by a subsequent motion, sought an order directing the delivery to him of the notes of Bevko, Inc., hereinbefore referred to, and adjudicating and determining Blumberg's rights therein. Blumberg made an opposing motion, seeking an order allowing Blumberg to sell his interest in the three notes of Bevko, Inc., hereinbefore referred to. These motions appear to have been addressed to the Superior Court, Law Division, under and by virtue of *R. R.* 4:75–2. *Cf. R. R.* 4:76; *N. J. S.* 2A:17–67.

At a hearing on May 13, 1954 on these two motions neither Blumberg nor the receiver addressed any objection to the other's motion adjectively. Blumberg's attorney agreed that the proceedings called for "a determination of who has the right to possession of these notes" and that Blumberg had appeared to the extent necessary "to protect what rights he has in the matter."

The facts disclosed during reception of evidence on these motions were that Alrich, O'Hara and Corson were principal stockholders of Bevko, Inc., a New Jersey corporation. Bevko, Inc. required financing for a project undertaken by it, and Alrich, O'Hara and Corson obtained the necessary

funds from Blumberg. Blumberg, called as a witness by the receiver, testified that on February 25, 1953, at his office in Philadelphia, Pennsylvania, he met with Alrich, O'Hara and Corson, Sidney Bookbinder, their attorney, and William Schwab, Blumberg's attorney. He testified that the three Bevko, Inc. notes ($20,000 each) were prepared and signed at that meeting, were delivered to him (Blumberg) then and were held by him thereafter. He testified that at the same meeting a written financing contract was entered into between him (Blumberg), Alrich, O'Hara and Corson. The financing contract was identified and placed in evidence. The gist of the financing contract was that Blumberg agreed to loan $25,000 each to Alrich, O'Hara and Corson; each of the latter was immediately to invest $5,000 in Bevko, Inc. and loan $20,000 to Bevko, Inc., and receive a corporate note therefor. Each was to "give to Blumberg an individual note to be secured by their issued shares (i. e., 25% each), of the said corporation." Paragraph 11 of the agreement provided that in the event of liquidation of Bevko, Inc. prior to its fulfillment of contracts (attached to the agreement), the assets should be distributed according to their investment, the investment of each of Alrich, O'Hara and Corson being identified as $5,000. Blumberg testified that Alrich, O'Hara and Corson delivered their individual notes to him on the same day. Mr. Bookbinder, called as a witness by the receiver, testified that the Bevko, Inc. notes were pledged to Blumberg as collateral for the three $25,000 loans. The Bevko, Inc. notes were not endorsed by Alrich, O'Hara and Corson. Mr. Bookbinder testified the individual notes (as distinguished from the Bevko, Inc. notes) were made by Alrich, O'Hara and Corson on February 26, 1953. He predicated the statement upon the date written on the individuals' notes and did not expressly deny the making thereof on February 25, 1953. Each of the individuals' respective $25,000 notes referred to the delivery of Bevko, Inc. stock to Blumberg as collateral security, and these individuals' notes also provided "THE ABOVE COLLATERAL SECURITY and any heretofore or which may hereafter" be deposited with Blum-

berg "and any other property of maker in (Blumberg's) possession, * * * shall stand as one general continuing collateral security * * *" for the individuals' obligations to Blumberg. The receiver asserted that "This being executed in Pennsylvania, Pennsylvania law will control." The receiver introduced evidence of pertinent Pennsylvania law. Blumberg did not object to the introduction of Pennsylvania law into the case, and on this appeal concedes generally its applicability.

The Superior Court, Law Division, determined on the evidence that the Bevko, Inc. notes in question had been validly pledged to Blumberg as collateral security. The court entered an order embodying this determination, releasing these notes from restraint and authorizing Blumberg to sell these notes. This is the order subjected to the receiver's present appeal.

The questions involved in this appeal include whether (1) the Superior Court, Law Division, had jurisdiction to determine Blumberg's rights in the Bevko, Inc. notes; (2) Pennsylvania or New Jersey law applies to determine the validity of the pledge; (3) judicial notice of Pennsylvania law may be taken in this case; (4) the evidence should be permitted to support a pledge in the light of the parol evidence rule, *i. e.*, whether there was a variation of the terms of the written agreement and collateral notes of the individuals, Alrich, O'Hara and Corson; (5) the absence of endorsement by the payees of Bevko, Inc. notes defeated the pledge.

## I. Jurisdiction

■ Blumberg contended on this appeal that the Superior Court, Law Division, lacked jurisdiction to enter a determination deciding his rights in and to the Bevko, Inc. notes in question. We find no merit in this contention. Blumberg filed a notice of claim to the notes under *N. J. S.* 2A :17–29. He did not avail himself of the statutory procedure made available to him by *N. J. S.* 2A :17–29, *supra*, to try out his

claim of property, but he (by his attorneys) acknowledged service of notices of motion and appeared generally in the proceedings in aid of execution and in fact moved for affirmative relief therein prior to making any suggestion or objection that he was not subject to the jurisdiction of the court. *Cf. White v. White,* 16 *N. J.* 458 (1954) ; *State v. U. S. Steel Corp.,* 12 *N. J.* 38, 43 (1953) ; *Trautman v. Higbie,* 10 *N. J.* 239, 242–243 (1952) ; *In re Van Winkle,* 3 *N. J.* 348, 360–361 (1950) ; *R. R.* 4:4–6. Compare *Whalen v. Young,* 15 *N. J.* 321, 333–334 (1954).

## II. APPLICABILITY OF PENNSYLVANIA LAW

▪ ██ The receiver asserted, and Blumberg conceded, on this appeal, that Pennsylvania law governs the validity of the alleged pledge of the Bevko, Inc. notes in question to Blumberg. The evidence is uncontradicted that the pledge, if any, was effected in Pennsylvania, and the obligations of Alrich, O'Hara and Corson were to be met there. Validity of a contract is to be determined by the law of the place of contract. *Staedler v. Staedler,* 6 *N. J.* 380, 389 (1951). Under the circumstances of the present case Pennsylvania law clearly applies. *Cf. Mill Factors Corporation v. Guardian Trust Co.,* 107 *N. J. L.* 529 (*E. & A.* 1931) ; see also *Goodrich on Conflict of Laws* (3rd ed. 1949), sec. 110, *pp.* 321 *et seq.; Stumberg, Conflict of Laws* (2nd *Ed.* 1951), *chapter* VIII, *pp.* 224, *et seq.*

## III. DETERMINATION OF THE APPLICABLE PENNSYLVANIA LAW

Among the questions involved is whether the Pennsylvania law proved was adequate to sustain the determination made by the trial court. The receiver, for the first time on this appeal, asserted that Pennsylvania law was not pleaded below and argued that for this reason the Uniform Judicial Notice of Foreign Law Act, *N. J. S.* 2A:82–27 *et seq.,* was not applicable. We find to the contrary.

The Uniform Judicial Notice of Foreign Law Act, *N. J. S.* 2A:82–27, provides:

"Whenever the common or statute law of any state is pleaded in an action in any court of this state, the court shall take judicial notice thereof. In the absence of such pleading, it shall be presumed that the common law of such state is the same as the common law as interpreted by the courts of this state."

Insofar as the statute refers to the necessity of "pleading" the foreign law, we have held that the issue of status of the pertinent law of the foreign jurisdiction may be raised not only in a complaint, but in an answer, at a pretrial conference "or, with permission of the court, at the trial itself." *Leary v. Gledhill,* 8 *N. J.* 260, 270 (1951).

▮▮ In the present matter there were no formal pleadings; the matters were asserted by motion and no pretrial conference was had. Under these circumstances the issue as to the foreign law was raised by the receiver during the "trial," *i. e.,* the hearing and reception of evidence on the motions. This is deemed by us to be a sufficient compliance with the statute, *N. J. S.* 2A:82–27, *supra,* under the *Leary* case, *supra.* Ordinary procedure would call for amendment of the pleadings and pretrial order in the event an issue not raised in the pleadings and pretrial order is tried by consent or without objection, *R. R.* 4:15–2. However, in the present case since there was an absence of pleadings and pretrial order *R. R.* 4:121 applied. *R. R.* 4:121, *supra,* provides that "the court shall proceed in any lawful manner not inconsistent with the Constitution, these rules or any applicable statutes." In this respect, therefore, the trial court was within its competence in the present matter in reaching its determination without amending the "pleadings."

The arguments addressed by the receiver to this court further assert that the determination of the Pennsylvania law by the Superior Court, Law Division, lacks support in the evidence introduced by the receiver and that Blumberg is precluded from reference to Pennsylvania decisions and statutes not introduced at the trial level. These arguments anticipate the independent investigation and consideration by

204

this court of pertinent Pennsylvania decisions or statutes, and deny our right to resort thereto in the disposition of this appeal.

█ The Uniform Judicial Notice of Foreign Law Act, *sec. 2, N. J. S. 2A*:82–28, provides that "The court may inform itself of such laws in such manner as it may deem proper * * *." Mr. Justice Heher, speaking for the former Supreme Court, construed *sec. 2* (now *N. J. S. 2A*:82–28), *supra,* to provide that the judge is not confined to the evidence of foreign law adduced by the parties. *Franzen v. Equitable Life Assur. Society,* 130 *N. J. L.* 457, 461 (*Sup. Ct.* 1943). The statute further provides "The determination of such laws shall be made by the court * * * and shall be reviewable." *N. J. S. 2A*:82–29. The Uniform Judicial Notice of Foreign Law Act, *N. J. S. 2A*:82–27 *et seq., supra,* specifically applies to *any* court in this State. The statute is remedial and should "be given a liberal interpretation to suppress the mischief and advance the remedy." *Franzen v. Equitable Life Assur. Society, supra,* 130 *N. J. L.,* at *page* 461.

█ The underlying philosophy of the Uniform Judicial Notice of Foreign Law Act is substantial justice. Mr. Justice Heher, in the *Franzen* case, *supra,* stated (130 *N. J. L.,* at *page* 460) :

"* * * the design of this enactment was to achieve that certainty in the ascertainment and application of foreign law which is attainable only when the determination is made by one versed in the philosophy and principles of law and in exegesis after the searching and exhaustive inquiry afforded by judicial notice of the pertinent statutes and decisions of the foreign state sovereignty * * *."

It has been observed that "In dealing with an issue of foreign law, whether at trial or on appeal, the rules of procedure should be designed to bring the foreign law before the court, should be flexible enough to allow for correction of inadvertent omissions, and should be keyed to effect but one result—the administration of substantive justice as it would be administered in the foreign court." Note, 37 *Cornell L. Q.,* 748, 756 (1952).

▮ The issue was raised at the trial level and Pennsylvania authorities in addition to those received in evidence at the trial have been brought to the attention of this court in the briefs on appeal. We have accepted this aid and in addition we have made our own independent investigation of Pennsylvania law as expressed in pertinent statutes and judicial decisions of that jurisdiction. In so doing we have invoked our constitutional jurisdiction, *N. J. Const.* 1947, *Art.* VI, *Sec.* V, *par.* 3, and statutory authority to "inform [ourselves] of such laws in such manner as [we] may deem proper." *N. J. S.* 2*A*:82–28, *supra.* *Cf. Franzen v. Equitable Assur. Society, supra,* 130 *N. J. L.,* at *page* 461.

## IV. The Merits

The principal question involved on the merits is whether the evidence introduced before the trial court shall have been resorted to in order to establish the existence of the alleged pledge of Bevko, Inc. notes in question to Blumberg, where the pledge of those notes was not expressed by specific reference thereto, *i. e.*, by detailed identification of such notes, in the financing contract between the parties dated February 25, 1953. In disposing of the subsidiary questions involved in the determination of this principal question Pennsylvania law is controlling and we rely thereon, taking judicial notice of the statutes and judicial decisions of that state.

*In limine* it is observed that the Supreme Court of Pennsylvania has held that "[n]otwithstanding the name given it, the parol evidence rule is a rule, not of evidence, but of substantive law: *Rest. Contracts,* § 237, *comment a; Wigmore on Evidence,* 3*d Ed., Vol.* IX, *pp.* 3, 4, § 2400 (1); *Williston on Contracts, Rev. Ed., Vol.* 3, *p.* 1813, § 631." *O'Brien v. O'Brien,* 362 *Pa.* 66, 66 *A.* 2*d* 309, 311, 10 *A. L. R.* 2*d* 714 (1949). *Cf. Harker v. McKissock,* 12 *N. J.* 310, 321 (1953).

▮ The general application of the parol evidence rule in Pennsylvania is that parol evidence is not admissible to alter, vary or contradict the express terms of a valid written agree-

ment. *First Nat. Bank of Scranton v. Payne*, 349 Pa. 446, 37 A. 2d 568, 569 (*Sup. Ct.* 1944). *Cf. Ross v. Orr*, 3 N. J. 277 (1949); *Shinn v. Black*, 97 N. J. L. 219 (*E. & A.* 1922).

The Pennsylvania Supreme Court in *Grubb v. Rockey*, 366 Pa. 592, 79 A. 2d 255, 258 (1951), expressed the prevailing law on parol evidence as follows:

"The modern Pennsylvania Parol Evidence Rule is well stated by Mr. Justice Stearne in *Walker v. Saricks*, 360 Pa. 594, 598, 62 A. 2d 9, 10: 'This Court said in *Gianni v. R. Russell & Co., Inc.*, 281 Pa. 320, 323, 126 A. 791, 792:

"Where parties, without any fraud or mistake, have deliberately put their engagements in writing, *the law declares the writing to be not only the best, but the only, evidence of their agreement.*" *Martin v. Berens*, 67 Pa. 459, 463; *Irvin v. Irvin*, 142 Pa. 271, 287, 21 A. 816. "*All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract* * * * and unless fraud, accident or mistake be averred, *the writing* constitutes the agreement between the parties, and *its terms cannot be added to nor subtracted from by parol evidence,*" *Union Storage Co. v. Speck*, 194 Pa. 126, 133, 45 A. 48, 49; *Vito v. Birkel*, 209 Pa. 206, 208, 58 A. 127.' "

*Cf. Bardwell v. Willis Co.*, 375 Pa. 503, 100 A. 2d 102, 104 (*Sup. Ct.* 1953).

The exceptions to the main rule are involved in the disposition of this case. Where the contract does not contain the full and exact agreement of the parties "the reason for the rule ceases" and parol evidence is admissible to cure the deficiency. *Yezback v. Croce*, 370 Pa. 263, 88 A. 2d 80, 81–82 (*Sup. Ct.* 1952). *Cf. Massari v. Accurate Bushing Co.*, 8 N. J. 299, 316 (1951); *Schlossman's, Inc. v. Radcliffe*, 3 N. J. 430, 434 (1950). It does not apply in matters involving fraud, accident or mistake. *Bardwell v. Willis Co., supra; Grubb v. Rockey, supra; First Nat. Bank of Scranton v. Payne, supra.*

While there were no pleadings, as such, in the present proceedings, the record of the hearings in the trial court shows that the claim advanced by Blumberg was premised at the trial level on failure of the financing contract dated February 25, 1953 to incorporate the understanding of the

parties. The evident intent of the entire transaction was to secure to Blumberg all possible protection, not only for his investment but also for his substantial loans to the individuals, Alrich, O'Hara and Corson, and to Bevko, Inc. A determination that the pledge of the Bevko, Inc. notes in question was contemplated, but by mistake not clearly expressed in the agreement, is consistent with the evidence and conduct of the parties.

It is well established in Pennsylvania that where there are contemporaneous writings relating to the same transaction, being integral parts of the whole transaction, the several writings are to be construed together. *Rekas v. Dopkavich*, 362 *Pa.* 292, 66 *A.* 2d 230, 233 (*Sup. Ct.* 1949). This rule has been applied where other papers are contemporaneous with or closely following the main agreement. *Parker v. Oil Well Supply Co.*, 186 *Pa.* 294, 40 *A.* 518 (*Sup. Ct.* 1898). *Cf. Lawrence v. Tandy & Allen, Inc.*, 14 *N. J.* 1, 6–8 (1953); *Schlossman's, Inc., v. Radcliffe, supra* (3 *N. J.*, at *page* 435). This principle is applicable here. The evidence on this premise supports the trial court's determination that there was a valid pledge of the Bevko, Inc. notes in question to Blumberg. The individuals' promissory notes in which reference was made to "any other property of maker in (Blumberg's) possession" were executed and delivered either on February 25, 1953, if Blumberg's testimony is to be believed (and it was not impeached) or on February 26, 1953, if the dates on the individuals' notes are controlling. In any event, the financing contract of February 25, 1953 in itself demonstrates clearly that these individuals' notes were part and parcel of the one financing transaction. Coterminous construction of these individuals' notes requires effect to be given to the words therein expressly used to identify other collateral, *i. e.*, the Bevko, Inc. notes in question, in addition to those individuals' notes and the assignments of stock in Bevko, Inc. expressly referred to therein.

There was a legal relationship of pledgor and pledgee created by the delivery of the Bevko, Inc. notes in question to Blumberg as collateral on the day he loaned moneys to

Alrich, O'Hara and Corson. The Pennsylvania Supreme Court has held that

"* * * Any agreement or instrument by which it is intended to diminish legal rights which normally accrue as a result of a given legal relationship or transaction must spell out the intention of the parties with the greatest of particularity, since such contracts or instruments are construed strictly against the party seeking their protection." *Morton v. Borough of Ambridge*, 375 *Pa.* 630, 101 *A.* 2d 661, 663 (1954).

In the present proceedings the receiver sought to diminish, in fact to destroy, Blumberg's rights as pledgee. The rule of the *Morton* case, *supra,* under these circumstances weighs against the receiver's contentions.

## V. Absence of Endorsement

The final question involved is whether the absence of endorsement of the Bevko, Inc. notes by, respectively, Alrich, O'Hara and Corson, defeats the pledge.

The pertinent Pennsylvania statutory provision expressly negatived the necessity of endorsement. 56 *P. S.* § 101 (1901, May 16, *P. L.* 194, *Ch.* I, *Art.* III, § 49) provided:

"Where the holder of an instrument, payable to his order, transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferer had therein; and the transferee acquires, in addition, the right to have the indorsement of the transferer; but for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

56 *P. S.* § 101, *supra,* is identical with section 49 of the Uniform Negotiable Instruments Law, 5 *U. L. A.* (*Part* I, 1943), *sec.* 49, *pp.* 12, 492. *Cf. Blaney v. Mellor Co.*, 351 *Pa.* 10, 39 *A.* 2d 825 (*Sup. Ct.* 1944); *R. S.* 7:2–49; *City Nat. Bank & Trust Co. of Chicago v. Oberheide Coal Co.*, 307 *Ill. App.* 519, 30 *N. E.* 2d 753 (*App. Ct.* 1941); *Brannan's Negotiable Instruments Law* (*7th Ed., Beutel,* 1948), *sec.* 49, *p.* 650 *et seq.*

In *American Exchange Nat. Bank of New York v. Federal Nat. Bank*, 226 *Pa.* 483, 75 *A.* 683, 684, 685, 27 *L. R. A.*,

*N. S.*, 666 (*Sup. Ct.* 1910), it was held that a pledge of a book account must be made by written transfer, but it was also held that a pledge of incorporeal property such as negotiable instruments or bank deposits could be made by mere delivery of the negotiable instrument or of the bank deposit book. It was held in *Camden National Bank v. Fries-Breslin Co.*, 214 *Pa.* 395, 63 *A.* 1022 (*Sup. Ct.* 1906), that one receiving negotiable paper as collateral security is entitled to be protected, as a *bona fide* holder, to the same extent as one who becomes the owner of such paper. *Cf. Munn v. McDonald*, 10 *Watts* 270, 273 (*Pa. Sup. Ct.* 1840).

 A negotiable note is transferred for "value" when it is transferred to the holder as and for collateral security. *Todd v. National Union Bank*, 132 *Pa.* 312, 19 *A.* 218 (*Sup. Ct.* 1890). *Cf. Camden National Bank v. Fries-Breslin Co.*, *supra.* "Value," under the Pennsylvania negotiable instruments statutes applicable at the time of the transactions involved herein, was defined as "any consideration sufficient to support a simple contract," including an antecedent or preexisting debt. 56 *P. S.* § 62 (1901, May 16, *P. L.* 194, *Ch.* I, *Art.* II, *sec.* 25). *Cf. R. S.* 7:2–25; *Sladkin v. Ruby*, 103 *N. J. L.* 449 (*E. & A.* 1927); *sec.* 25 of the Uniform Negotiable Instruments Law, 5 *U. L. A.* (*Part* I, 1943), *sec.* 25, *pp.* 8, 287, anno. *pp.* 320–321; *Brannan's Negotiable Instruments Law* (7th *Ed.*, *Beutel*, 1948), *sec.* 25, *pp.* 490, 495, 516. There is little doubt that under section 25 of the Uniform Negotiable Instruments Law one who has taken a negotiable instrument in payment of or as collateral security for a debt, including a preexisting debt, is a holder for value. See 45 *Mich. L. Rev.* 214 *et seq.* (1947). The Pennsylvania statutes further provided: "Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien." 56 *P. S.* § 64. *Cf. R. S.* 7:2–27. Compare *Blaney v. Mellor Co.*, *supra.*

 We find that under the pertinent principles of Pennsylvania law, hereinbefore discussed, the trial court's determination that there was a valid pledge of the Bevko, Inc. notes

in question, without endorsement, by delivery to Blumberg on February 25, 1953, was not erroneous.

## CONCLUSION

For the reasons expressed in this opinion the order of June 10, 1954, of the Superior Court, Law Division, to the extent to which such order was subjected to this appeal, is affirmed.

No costs will be taxed to either party.

*For affirmance*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING, JACOBS and BRENNAN—5.

*For reversal*—Justices HEHER and OLIPHANT—2.